IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF ILLINOIS

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| vs. | ) |
| | ) |
| PHARMACIA CORPORATION, et al., | ) |
| | ) |
| Defendants. | ) |
| | ) CIVIL NO. 99-63-GPM |
| | ) |
| PHARMACIA CORPORATION and SOLUTIA, INC., CERRO FLOW PRODUCTS, INC., and EXXONMOBIL OIL CORPORATION, | ) |
| | ) |
| Crossclaim Plaintiffs, | ) |
| | ) |
| vs. | ) |
| | ) |
| ROGERS CARTAGE, | ) |
| | ) |
| Crossclaim Defendant. | ) |

# **MEMORANDUM AND ORDER**

**MURPHY, District Judge:**

Before the Court is Crossclaim Defendant Rogers Cartage Company's (Rogers Cartage) Motions to Dismiss (Docs. 774, 782 and 791) the Amended Crossclaims filed by Crossclaim Plaintiff's Pharmacia Corporation and Solutia, Inc. (Doc. 780) (collectively, Pharmacia), Cerro Flow Products, Inc. (Doc. 781) (Cerro), and ExxonMobil Oil Corporation (Doc. 789) (ExxonMobil). Also before the Court is Pharmacia's Motion to Strike (Doc. 794) the two Statements of Supplemental Authority filed by the United States (Docs. 777 and 790).

Page 1 of  9

**BACKGROUND**

The procedural history of this action is long and tumultuous; spanning over one decade and involving over thirty parties. The Crossclaim Plaintiffs are parties potentially responsible for the release or threat of release of hazardous substances at an industrial site known as Sauget Area One (SA1). In January 1999, these parties were sued by the United States pursuant to Section 107 of the Comprehensive Environmental Response, Compensation, and Liability Act of 1980 (CERCLA) (42 U.S.C. § 9607, as amended) for the recovery and clean-up costs allegedly incurred by the United States at this nearly century-old industrial site. In turn, these parties filed Crossclaims for contribution under Section 113 of CERCLA (42 U.S.C. § 9613), along with other Third Party claims, against a number of other parties, including Rogers Cartage. The United States, following Crossclaim Plaintiffs' lead, then brought CERCLA Section 107 claims against the same additional "potentially responsible parties" (PRPs), including Rogers Cartage.

In November 2003, the United States was allowed try its CERCLA Section 107 claims against Rogers Cartage. After a five-day bench trial, this Court found that Rogers Cartage was not liable to the United States (Doc. 615). Then, in August 2004, this Court denied the United States' Motion for Reconsideration of its ruling (Doc. 667), and granted Roger Cartage's Motion to Dismiss (Doc. 658) Crossclaim Plaintiffs' CERCLA Section 113(f) contribution claims against it. Those contribution claims were dismissed as derivative of the United States' claims against Rogers Cartage, which it lost (*see* Doc. 681). Over the next five years, the remaining PRPs, including Crossclaim Plaintiffs, worked toward a settlement agreement while continuing to investigate and clean-up the contamination at the SA1 site.[1]

---

[1] A partial consent decree (Decree) was entered between the United States and Crossclaim Plaintiffs, along with other PRPs, on December 15, 2009 (*see* Doc. . However, the Decree only covers response costs

On December 2, 2009, Pharmacia filed a Motion for Leave to File a Third Amended Joint Crossclaim and Counterclaim against Rogers Cartage. In its motion, Pharmacia argued, in part, that, based on a "momentous shift" in CERCLA interpretation under the Supreme Court's landmark decision in *United States v. Atlantic Research Corp.*, 551 U.S. 128 (2007), private PRPs, such as Pharmacia, now may bring CERCLA Section 107 cost-recovery actions against other private parties for expenses they have directly incurred (*see* Doc. 765).[2] On January 11, 2010, this Court conducted a hearing on Pharmacia's motion with all relevant parties. Because the *Atlantic Research* decision did, in fact, mark a significant change in CERCLA interpretation, and finding no undue prejudice to Rogers Cartage, this Court granted Pharmacia's Motion for Leave to File a Third Amended Joint Crossclaim and granted Cerro's Motion for Leave to File the same (Doc. 778). Shortly thereafter, this Court granted ExxonMobil's Motion for Leave to File its Amended Crossclaim (Doc. 786).

Rogers Cartage moves to dismiss the Amended Crossclaims pursuant to Federal Rule of

---

incurred by the United States through October 31, 2007, and only at certain sites within Sauget Area 1 (SA1). Moreover, Rogers Cartage is not a party to the Decree. The Decree, therefore, is only partial.

[2] In most CERCLA actions, determining the type of costs that a party is seeking to recover is a paramount primary inquiry. Most often, a party to a CERCLA action is seeking to recover one of two primary forms of costs: 1) reimbursement, a.k.a. "indirect" expenses, or 2) directly incurred expenses. Reimbursement expenses are those paid to another party to satisfy a settlement agreement or court judgment obtained pursuant to a CERCLA Section 107 "cost recovery action" or a Section 106 "abatement action." A PRP who pays out such reimbursement expenses may recover a portion of those expenses *only* by bringing a CERCLA Section 113 contribution claim against other PRPs with *common liability* stemming from the action. Directly incurred expenses, by contrast, are those costs that a party does not pay to another a party. According to the *Atlantic Research* Court, "§107(a) permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup costs." 551 U.S. 128, 139 (2007).

Since the *Atlantic Research* decision, however, courts have further split over which CERCLA subsection, if any, should apply to the two types of "direct" expenses: those incurred "voluntarily" and "compelled" costs of recovery. "Voluntarily" incurred expenses are those paid directly by any party in a self-initiated effort to clean-up a polluted site over which the party has or had responsibility. "Compelled" costs of recovery, by contrast, are expenses incurred directly by a PRP pursuant to a consent decree or any administrative order from a state or federal agency. Here, Crossclaim Plaintiffs are bringing a CERCLA §107(a) cost recovery action against Rogers Cartage in an attempt to recover both types of directly incurred expenses, and any similar expenses in the future.

Civil Procedure 12(b)(6), arguing that Crossclaim Plaintiffs have failed to state a claim upon which relief may be granted because "parties, such as [Crossclaim Plaintiffs], who have been sued by the United States, may not bring nor maintain a § 107 claim against another party" (Doc. 774, p. 2). Rogers Cartage's motion, therefore, presents a unique legal issue: whether under the *Atlantic Research* Court's interpretation of CERCLA, Crossclaim Plaintiffs — who earlier, after being sued by the United States, brought a § 113 contribution action against Rogers Cartage that was dismissed — may now bring a § 107(a) action against Rogers Cartage to recover, past and ongoing, directly incurred expenses which, according to Crossclaim Plaintiffs, are "neither derivative of, nor co-extensive with [the United States'] costs" (Doc 780, ¶ 7). The issue has been fully briefed by all parties and, having determined that a hearing is unnecessary, the Court rules as follows.

## ANALYSIS

It is a plaintiff's burden to plead sufficient factual matter to state a claim to relief that is plausible on its face. *See Ashcroft v. Iqbal*, 129 S. Ct.1937, 1949 (2009), *citing Bell Atlantic Corporation v. Twombly,* 550 U.S. 544, 556 (2007). Under *Iqbal*, "a claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*, *citing Twombly*, 550 U.S. at 556. The Seventh Circuit Court of Appeals, in light of *Iqbal* and its progeny, has provided further guidance:

> First, a plaintiff must provide notice to defendants of [its] claims. Second, courts must accept a plaintiff's factual allegations as true, but some factual allegations will be so sketchy or implausible that they fail to provide sufficient notice to defendants of the plaintiff's claim. Third, … courts should not accept as adequate abstract recitations of the elements of a cause of action or conclusory legal statements.

*Brooks v. Ross*, 578 F.3d 574, 581 (7th Cir. 2009). Finally, "'determining whether a complaint states a plausible claim for relief will … be a context-specific task that requires the reviewing court

to draw on its judicial experience and common sense.'" *Cooney v. Rossiter*, 583 F.3d 967, 971 (7th Cir. 2009), *quoting Iqbal*, 129 S. Ct. at 1950.

Here, the correct resolution of the Motion to Dismiss turns almost entirely upon the current state of CERCLA law. In other words, Rogers Cartage does not argue that Crossclaim Plaintiffs cannot put forth sufficient *facts* to demonstrate that it might be liable, at least in part, for some of the response costs at issue. Rather, Rogers Cartage argues that Crossclaim Plaintiffs' claims *legally* fail to demonstrate such liability because CERCLA does not allow direct cost-recovery claims between private PRPs who earlier sought (and, here, lost) contribution claims against the same party. As such, the only issue to be resolved is whether CERCLA, as interpreted by the *Atlantic Research* Court, allows for a § 107(a) cost recovery action in this unique procedural context.

In *Atlantic Research*, the Supreme Court attempted to clarify "the complementary yet distinct nature of the rights established in §§ 107(a) and 113(f)." 551 U.S. at 138   The Court held:

> The remedies in §§ 107(a) and 113(f) complement each other by providing causes of action to persons in different procedural circumstances. Section 113(f)(1) authorizes a contribution action to PRPs with common liability stemming from an action instituted under § 106 or § 107(a). And § 107(a) permits cost recovery (as distinct from contribution) by a private party that has itself incurred cleanup costs. Hence, a PRP that pays money to satisfy a settlement agreement or a court judgment may pursue § 113(f) contribution. But by reimbursing response costs paid by other parties, the PRP has not incurred its own costs of response and therefore cannot recover under § 107(a). As a result, though eligible to seek contribution under § 113(f), the PRP cannot simultaneously seek to recover the *same expenses* under § 107(a).

551 U.S. at 139 (internal quotation and citations omitted) (emphasis added).[3] As this Court noted

---

[3] As the *Atlantic Research* Court noted in footnote five, "§ 113(f)(3)(B) permits a PRP to seek contribution after it 'has resolved its liability to the United States or a State … in an administrative or judicially approved settlement … .'" 551 U.S. 139 n. 5, *quoting* 42 U.S.C. § 9613(f)(3)(B). Here, this is exactly what Crossclaim Plaintiffs, who had resolved their liability to the United States, sought in their earlier § 113(f)(3)(B) contribution claim against Rogers Cartage. Because the United States lost its § 107 action

in its earlier Order, however, in footnote six of *Atlantic Research*, "the Supreme Court expressly declined to decide the exact scenario now confronting this Court: 'whether compelled costs of response' — that is, costs that are *not* voluntarily incurred, such as those incurred by a PRP pursuant to a consent decree — 'are recoverable under § 113(f), § 107(a), or both'" (Doc. 778, *citing Atlantic Research*, 551 U.S. 128 at 139 n. 6). Thus, while the Supreme Court clearly demarcated which CERCLA sub-sections apply in certain procedural scenarios, it also left unresolved the specific scenario at issue here, while acknowledging the potential for overlap between Sections 107(a) and 113(f) of CERCLA.

Starting with what *is* clear in light of *Atlantic Research*, Crossclaim Plaintiffs' may not attempt to recover from Rogers Cartage any reimbursable expenses incurred pursuant to their settlement agreements with the United States — those claims have been dismissed. On the other hand, under *Atlantic Research*, Crossclaim Plaintiffs apparently may pursue their § 107(a) cost recovery action for any so-called "voluntary costs" — *if* the potentially voluntary nature of these costs is supported, of course, by sufficient evidence. To demonstrate such voluntary response costs, Crossclaim Plaintiffs' will need to show, at a minimum, that these costs were 1) incurred voluntarily *outside* the scope of any administrative order or consent decree, and 2) not reimbursable to another party. Such costs, incurred voluntarily, "are recoverable only by way of § 107(a)(4)(B)." *Atlantic Research*, 551 U.S. 128 at 139 n. 6. This much is seemingly clear.

Less clear, because it was left undecided by the *Atlantic Research* Court, is the correct procedural path under CERCLA for Crossclaim Plaintiffs' attempt to recover some of their "compelled" expenses — that is, recovery costs expended pursuant to an administrative order or a

---

against Rogers Cartage, however, these claims were dismissed as derivative of the United States' claim.

consent decree. Regarding these costs, Rogers Cartage attempts to paint a black and white picture of the current CERCLA landscape. In reality, both the circuit courts and many district courts are deeply divided on this specific issue — whether claims for expenses incurred directly in response to an administrative order or consent decree (and therefore, "compelled"), may be brought under § 107(a). *See, e.g.*, *W.R. Grace & Co.-Conn. v. Zotos Int'l, Inc.*, 559 F.3d 85 (cited here by both parties and holding "that parties who have not been subject to a civil action under section 106 or section 107 but who have remediated a contaminated site pursuant to a consent order entered with a state agency may bring a cause of action to recover necessary costs of response under CERCLA section 107(a)"), *cf. ITT Industries, Inc. v. Borgwarner, Inc.*, 506 F.3d 452, 461 (finding that an Administrative Order on Consent (AOC) does not constitute an administratively approved settlement and as a result, a party may use § 107(a) to recover costs incurred under an AOC); *see also, Appleton Papers, Inc. v. George A. Whiting Paper Co.*, 572 F.Supp.2d 1034 (E.D. Wis. 2008) (*Appleton Papers*); *cf. City of Waukegan, Illinois v. Nat'l Gypsum Co.*, No. 07 C 5008, 2009 WL 4043295 (N.D. Ill. Nov. 20, 2009) (Distinguishing *Appleton Papers* because Waukegan had allegedly incurred additional costs beyond the scope of two consent decrees, with the U.S. EPA and the State of Illinois, finding this to be enough to survive a motion to dismiss). As such, to argue that the door to Crossclaim Plaintiffs' § 107(a) cost recovery action has been completely and authoritatively closed shut is inaccurate.

Further, while some courts have held otherwise, nowhere in *Atlantic Research* did the Supreme Court hold that a PRP previously subject to a suit by the United States may not bring a § 107(a) cost recovery action against another private party. What the *Atlantic Research* Court did hold is, if a PRP is eligible to seek contribution under § 113(f), "the PRP cannot simultaneously seek to recover the *same expenses* under § 107(a)." 551 U.S. at 139 (emphasis added).

Here, Crossclaim Plaintiffs expressly allege that the purpose of their § 107(a) action is to recover response costs which were neither derivative of, nor co-extensive with the United States costs; in other words, expenses that are allegedly *different* from those sought by the United States in its trial against Rogers Cartage back in November 2003. Now, Crossclaim Plaintiffs are seeking to recover some of those response costs from Rogers Cartage who, they allege, owned portions of at least three sites within Sauget Area One, and operated a truck terminal and truck washing operation on that property in the 1960's and 1970's (Doc. 780, ¶83). "One of CERCLA's main purposes is to "encourage private parties to assume the financial cleanup by allowing them to seek recovery from others." *W.R. Grace & Co.-Conn.*, 559 F.3d 85 at 94, *citing Key Tronic Corp. v. United States*, 511 U.S. at 819 n. 13 (internal quotation omitted). Thus, allowing Crossclaim Plaintiffs' § 107(a) cost recovery action to proceed neither contravenes the Supreme Court's current interpretation of CERCLA, nor one of act's fundamental purposes.

Finally, Pharmacia has also filed a Motion to Strike (Doc. 794) the Statements of Supplemental Authorities filed by the United States on two separate occasions (Docs. 777, 790), which the other Crossclaim Plaintiffs have joined. While it is true that the United States failed to follow the Local Rules when filing these notices, the Court was already fully apprised of the opinions referenced therein. As such, there was no prejudice to any party. Understandably, the United States has a great interest in the outcome of this and other CERCLA actions. Regarding the instant motions, however, it does not have a legal "dog" in this particular procedural "fight." In the future, therefore, the United States **SHALL** seek leave to file such Notices beforehand.

## CONCLUSION

At bottom, Crossclaim Plaintiffs have pled sufficient facts to make it plausible that at least some of their recovery expenses — either voluntary, compelled or both — are more extensive in

time and/or scope than those of the United States. In other words, when viewing the facts in a light most favorable to Crossclaim Plaintiffs, it is clear to the Court that they each may have incurred direct response costs that are not derivative of the earlier, less extensive claims that the United States brought against Rogers Cartage and lost. Further, the Supreme Court has held that a § 107(a) cost recovery action is the only action appropriate for recovering voluntary costs, and it has not closed the door on PRPs, such as Crossclaim Plaintiffs, using § 107(a) to recover so-called compelled costs from other parties. As such, Crossclaim Plaintiffs' Amended Crossclaims are both factually plausible and legally possible. At this point, no more is required to defeat Roger Cartage's Motions to Dismiss.

Accordingly, Crossclaim Defendant Roger Cartage Company's Motions to Dismiss (Docs. 774, 782 and 791) the Amended Crossclaims of Pharmacia Corporation and Solutia, Inc., Cerro Flow Products, Inc., and ExxonMobil Oil Corporation (Docs. 780, 781 and 789), are hereby **DENIED**. Pharmacia's Motion to Strike (Doc. 794) the two Statements of Supplemental Authority filed by the United States is also **DENIED**. Crossclaims Plaintiffs' CERCLA § 107(a) cost recovery action against Rogers Cartage may proceed.

**IT IS SO ORDERED.**

DATED: 05/12/10

s/ *G. Patrick Murphy*
G. PATRICK MURPHY
United States District Judge